Ms. Newman, good morning. Good morning, Your Honor. Good morning to the Court. May it please the Court, Elizabeth Newman, representing Ms. Lavelle. Your Honors, I'd like to focus this morning on the Guidelines Calculation issue, that is, the issue about why Mr. Joseph Bertelli, under the Guideline and its commentary, can't be considered a victim under the More Than One Victim section. Counsel, you're familiar with the Ameline case, I take it? Yes. Are you interested in a remand under Ameline to have the sentence reconsidered? Yes, we are, Your Honor. You understand the possibility is the sentence could be increased? We do, Your Honor. But you still desire a remand? Yes, Your Honor. Ms. Lavelle was given a low-end sentence under the mandatory version of the Guidelines. We are interested in an Ameline remand. However, since Booker does say that even under the advisory version of the Guidelines, the district court must conduct the – a correct version of the Guidelines calculation, we do think that the More Than One Victim calculation is relevant for the Court's consideration today. All right. Under that – that Guidelines provision in the commentary, Your Honors, 2F1.1b2b, Mr. Bertelli isn't a victim of the fraud because there's only one victim. That's Capital Partners. The commentary to 2F1.1 says that a scheme to defraud more than one victim is a plan to obtain something of value from more than one person. And it defines a victim as a person or entity from whom the funds are to come directly. So defrauding more than one victim means trying to get something of value from each of more – of two or more people. What about – can we consider the possibility for identity theft? I mean, this may be a bit of a reach, but I was reading the materials. I wondered if the – I forget the elderly gentleman's name. Mr. Bertelli, Your Honor. Yeah, Mr. Bertelli. If his name was being forged on loan documents or other official papers, couldn't that potentially destroy his personal credit rating and so on down the road? So that he doesn't have to be out any money, but he could certainly be injured by your client's conduct, couldn't he? Your Honor, the Guidelines provision does recognize that under other Guidelines provisions, it's possible that people who are not the people from whom funds came directly may be considered victims for, for example, restitutionary purposes, I think the Guidelines commentary notes. But for this particular Guidelines provision, the more than one victim Guidelines provision, Mr. Bertelli can't be considered a victim because funds never came directly from him to either of the defendants or their corporations. Let me ask Judge Nelson's question in a different way. If the Guidelines are now advisory and not binding, on the Ameline remand, why couldn't the district court consider the theory that I just articulated in concluding that there was more than one victim here for purposes of punishment? And even though this particular provision of the Guidelines doesn't consider that, wouldn't that still be a relevant consideration at sentencing and fashioning an appropriate sentence for your client's behavior? Potentially so, Your Honor, just as the other 3553A factors would be areas in which the defense could present potentially relevant mitigating factors that could influence the district court's decision to give a sentence less than the one it imposed before Booker was decided. But I guess what I'm really wrestling with is, in light of Judge Nelson's appropriate caution, be careful what you ask for. If we send this thing back down and the Guidelines are not binding, what is it that you're asking us to tell the district court? I mean, even if we give the district court an interpretation of this Guideline, it's not binding on the district court in determining who the victims were of the conduct. And he could sentence based upon the harm that I articulated. Certainly, Your Honor. Just as it could, the court could have sentenced based on a number of factors that the government proposed at the initial sentencing before Booker. And the court chose not to do that. So you're willing to take the risk, basically, that you're going to be able to convince, is it Judge Sabra? It's Judge Otero, Your Honor. Otero. You're going to be able to convince Judge Otero that somehow there are more mitigating factors than what were considered originally? Yes, given that Judge Otero did have discretion before to give a higher sentence than he imposed initially. I think we had a good point of mind on this issue. Is there anything else you wanted to cover? Do you want to reserve your time? I'll reserve the balance of my time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Dorothy Kim on behalf of the United States. Good morning. May I just ask, since your opposing counsel wants a remand, I assume you have no objection to a remand? That's correct. That's correct, Your Honor. The government submits that under this Court's recent decision in Moreno-Hernandez, a remand is that we wouldn't object to it and that it's likely. I'd also note for the Court, Your Honors, that during the initial sentencing, the government submitted in its sentencing positions that it would have sought the application of additional enhancements, including an obstruction enhancement, but that because this case fell between Blakely and Booker, and because the obstruction of justice enhancement had not been charged in the indictment, which our office was doing in this time period, that we felt constrained in arguing for the application of that enhancement. The government's position is that on remand, we would seek the application of that enhancement and, as we did in the lower court, argue that the high end of the guidelines is appropriate. Well, it sounds to me like opposing counsel understands the risk. Yes, Your Honor. So do you have anything to add on the issue that she was arguing? Yes, Your Honor. As an initial matter, the district court actually applied the November 2001 version of the guidelines, and therefore the 2F1.1 application note definition of victim didn't actually apply to the district court's findings. The defendant argues that it's actually an ex post facto issue, that if the court had correctly considered the 2000 version of the guidelines, it would have come up with an offense level that was lower than the 2001 version. Your Honors, the cases cited by the defendant are distinguishable from this case, because this case was actually charged as a fraudulent scheme with two defendants, the defendant appellant and a co-schemer, Robert Cole. And, Your Honors, there is evidence that both capital partners and Robert Cole tried to get money back from Joseph Bertelli. The government's position is that not only was Joseph Bertelli a victim because the defendant disclosed his Social Security number, his bank account information, his date of birth, and forged his signature on various documents, but that he was also a victim because it was perceived in this scheme that was charged from August 2000 to December 2000, that capital partners, on behalf of their client, DeNova, and Your Honors, DeNova was actually the company that co-schemer Robert Cole operated, that capital partners acting on behalf of their client would eventually try to obtain $52,130 from Joseph Bertelli. Your Honors, there's also evidence, and I'd cite the Court to PSR, paragraph 26 for this defendant's PSR, that DeNova actually sued Joseph Bertelli to recover $52,130, and that capital partners submitted two collection notices to Joseph Bertelli. And therefore, although the government concedes that the money didn't actually move from Joseph Bertelli to either capital partners or DeNova, the way the scheme was charged and proven was that the ultimate goal was that there would be such movement. And I assume, to go back to the question that I asked Ms. Newman, that collection activity could potentially destroy his credit. Yes, Your Honor. What happened was that the person at capital partners discovered this fraud when they spoke with Joseph Bertelli. The evidence at trial was that Joseph Bertelli was actually in and out of the hospital and very ill at the time. And therefore, the government's position was that the way this scheme would have played out was that he would never have disclosed the fraud because he was so ill. In addition, there was evidence, and it was charged in the indictment, that the defendant had engaged in a lulling scheme. And when Joseph Bertelli learned of the collection notice, she told him, don't worry about it. So, Your Honor, the government's position is that there's no ex post facto concern because if the district court had applied the November 2000 version of the guidelines, it would have concluded that the base offense level was 14. And indeed, the district court made that finding on the record. Let me ask you this. Yes, Your Honor. What difference does it make if the guidelines are now advisory and it's the 3553A factors that inform the district court's decision making on the sentence? Who cares what version of the guidelines apply? They're not binding. That's correct, Your Honor. The government, though, would urge that this court actually decide that issue because it's not clear whether if this case were to be remanded and the district court were to say during the limited remand, my sentence would not have been materially differenced. I'm not sure whether or not the defendant could then appeal the district court's conclusion that if it had applied the November 2000 version of the guidelines, it would have concluded that the sentence would have been the same. But as long as the district court judge is careful to say, I understand that these provisions are no longer binding, but in consideration of the 3553A factors, I find that this sentence is the appropriate one, what difference does it make what the guidelines say? Well, the government would urge that on remand that the court should consider the guidelines and that under a proper application of the guidelines, including the application of 2F1.1, that the court should at least start from the range that would be mandated by those guidelines. And therefore, we would still urge the court to consider who a victim is for those applications. So the argument would be that the guideline range gives us a presumptively reasonable sentence which the district court is free to depart from if it articulates applying the 3553A factors, the grounds for its decision to impose a different sentence. Yes, Your Honor. And the government's position would be that that is the presumptively reasonable sentence, the application of the guidelines. But on the remand, as I stated earlier, we would not be limited by just the application of the enhancements that were charged in the indictment. And therefore, we would have a presumptively higher range for a reasonable sentence. Ms. Kim, what would be the bottom line, the paragraph of this Court's decision in your view? And it's important that Ms. Newman listen because she's going to have to rebut it if she can. The bottom line view would be that this case would be remanded for consideration of the guidelines, the limited consideration under Ammoline, but that the Court's conclusion that Joseph Bertelli was a victim was not an erroneous one. And therefore, if on remand the district court were to reconsider the guidelines as a presumptively reasonable sentencing range, that the court would not be incorrect in concluding as it did during the first sentencing that Joseph Bertelli was a victim. Thank you. Thank you, Your Honors. Ms. Newman, I ask that question because I assumed that she was going to say what she said. And I assume there is at least a basis for the Court to do what she said, suggested. So you may want to tell us what's wrong with what she suggested. There are two things wrong with what Ms. Kim has suggested, Your Honor. The first is the 2F1.1 issue. And I would dispute vigorously that the allegations in this case, that what the government proved, showed that Mr. Bertelli was a victim under this guideline section. I want to tell you that with a third of the Court, there's no problem about the two victims. Now, I don't announce because I want to, you know, shock. I announce so you can tell me, so you can realize you've got to tell us what's wrong with why, on the basis that she suggested and on the basis that Judge Talmadge suggested, is he not a victim? Well, Your Honor, I would first refer to the Court to paragraph 9A of the superseding indictment, which is on page 12 of the excerpts, which says, Defendants Lavelle and Cole would agree to each other to obtain money for Defendant Lavelle and Newtek from capital partners. So the scheme charged and the scheme charged all through that paragraph 9 is all about getting money from capital partners by these two defendants. And since the guideline section says that the money has to come from the victim directly to the defendants, you have to show in some way that Joseph Bertelli is something more than a consequential involuntary participant here. I would refer to the rest of the argument. But you ought to make sure Ms. Lavelle agrees with you that she wants this case remanded. Certainly, Your Honor. Certainly, Your Honor. And in that connection, you've already lost before this judge below. Assuming that he gives a much higher sentence, and I agree with Judge Ferris, you better make sure your client wants to go back. What would be our standard of review if you come back here? Again, Your Honor, thank you, because that directs me to the other point that Ms. Kim made that I believe is incorrect, and that is that a guideline sentence is presumptively reasonable. With 3553A factors substituting as departures, I think that mischaracterizes Booker and mischaracterizes the vastly increased flexibility that district courts now have, because in the ---- To go upward as well as downward. Yes. To go upward as well as downward. And in our district, we've seen them go both ways, Your Honor. And so I would say that there are two things, again, wrong with the proposed disposition that Ms. Kim has articulated. But my question is, you come back here for a second time. Yes. What would be our standard of review? The standard of review is for reasonableness, Your Honor. Reasonableness. Yes. Or I should say for unreasonableness. Unreasonableness because it articulates reasons we will affirm, will we not? Not necessarily, Your Honor. I think that, of course, this Court hasn't yet said what reasonableness actually means on direct review. But if you look at what other courts have done, the first step is to see first that the guidelines calculation is correct, and then to look at the 3553A factors, and then to see whether, given the 3553A factors and the court's own reasons, the court's stated reasons for giving the sentence that the court did impose, that there is nothing excessive in either direction, given what the court has articulated as the basis for its sentence. Now, if you use the term excessive, as long as the punishment provides, is provided within the statutory range, not the guideline range, but the statutory range, and as long as the district judge articulates the 3553A factors that influence the choice within the statutory range, I have the same question that Nelson does. How will we say on appeal that that's an unreasonable sentence if it happens to be different from the point within the guideline range? I think that the court's – I may be misinterpreting Your Honor's question, but I think that the court's point of inquiry has to begin with the reasons articulated by the district court given what the 3553A factors are and given the arguments in mitigation and aggravation proposed by the parties. I agree that the standard seems rather nebulous right now. And if the court is really concerned about this issue – I would say the standard seems to be very flexible in terms of giving district judges more leeway than the guidelines ever did. We're going back – you may be a little young for this, but we're going back – That young, Your Honor. To the good old days when I was a defense lawyer, and you actually had a shot at convincing sentencing judges that maybe probation was appropriate in a case that the guidelines said you can't grant probation anymore. And so we're kind of moving back in that direction, which is going to give, I think, appellate courts pause before we overturn sentences that are within the statutory range, as long as the district judge adequately articulated the factors that led him or her to impose the sentence that they fashioned. I would disagree, Your Honor, that the statutory maximum is the limit of reasonableness. Obviously, this is not an issue that either party briefed, and I would encourage the Court to ask us for further briefing if this is an issue that's going to be guiding the Court in its disposition. I'm sorry, Your Honor? It's not before us now that the – you must guess that there's a reason the Court is talking to you about what will happen because you don't want to be in a position where you put your client in a worse position than she's in now. No, Your Honor. No lawyer wants that. And that's the only reason. At the moment, we wouldn't call for additional briefing because the question's not here yet. I understand that, Your Honor, but it seems such a pressing concern of the Court. Oh, it's just to caution you. Thank you, Your Honor. I appreciate the warning. Thank you, Ms. Newman. The case just argued is submitted.
judges: Farris, D.W. Nelson, Tallman